IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| **DON LAMONT WILKERSON,** | ) |
| **Movant,** | ) |
| v. | ) CIVIL ACTION NO. 2:21-00155 |
| | ) (Criminal No. 2:16-00218) |
| **UNITED STATES OF AMERICA,** | ) |
| **Respondent.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Memorandum in Support.[1] (Document Nos. 240 and 241.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 243.)

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Criminal Action No. 2:16-00218:**

On November 22, 2016, Movant was charged in a three-count Indictment with three counts of distribution of a quantity of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Criminal Action No. 2:16-00218, Document No. 1.) On December 2, 2016, Assistant Federal Public Defender George H. Lancaster, Jr., was appointed to represent Movant. (Id., Document No. 10.) On March 10, 2017, Mr. Lancaster filed a "Motion to be Relieved

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of Appointment as Counsel." (Id., Document No. 21.) Following a hearing on the foregoing Motion, the District Court granted Mr. Lancaster's "Motion to be Relieved of Appointment of Counsel" and directed the CJA Supervising Attorney to appoint new counsel to represent Movant. (Id., Document Nos. 23 and 24.) By Order entered on March 23, 2017, Gerald M. Titus, III was appointed to represent Movant. (Id., Document No. 25.) On June 28, 2017, a three-count Superseding Indictment was filed charging Movant with two counts of distributing 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 3); and one count of distributing 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2). (Id., Document No. 35.)

On July 24, 2017, the United States filed its Motion *In Limine* to Excluded Arguments and Evidence Regarding Potential Penalties Facing Defendant. (Id., Document No. 47.) On July 31, 2017, Movant, by counsel, filed the following pretrial motions: (1) Motion to Suppress Evidence of Alleged Drug Distributions (Document No. 50-1); (2) Motion to Suppress Custodial Statements (Document No. 51); (3) Motion *In Limine* to Prohibit Any Expert Testimony By Investigating Officers (Document No. 52); (4) Motion *In Limine* to Prohibit Introduction of Rule 404(b) Evidence of Crimes, Wrongs or Other Acts (Document No. 53); (5) Motion *In Limine* to Prohibit the Introduction of Undisclosed Physical Evidence (Document No. 54); (6) Motion *In Limine* to Exclude Witnesses from Courtroom Pursuant to Rule 615 (Document No. 55); (7) Motion *In Limine* to Prohibit Reference to Supposed Origin of Controlled Substances (Document No. 56); (8) Motion *In Limine* to Allow Defendant to Appear at Trial Without Restraints in Presence of Jury (Document No. 57); (9) Motion *In Limine* to Prohibit Introduction of Witness Testimony

Characterizing Audio and Video Records (Document No. 58); and (10) Motion *In Limine* to Prohibit the Introduction of Undisclosed MDENT Policies and Procedures for Searching Informants and Vehicles (Document No. 59). On August 7, 2017, the United States filed its Responses to Movant's Motions *In Limine*. (Id., Document Nos. 64 -72.) On August 7, 2017, Movant, by counsel, filed Movant's Response to the United States' Motion *In Limine*. (Id., Document No. 73.) The District Court conducted a pre-trial motions hearing on August 8, 2017. (Id., Document Nos. 74 and 80.) On October 3, 2017, Movant, by counsel, filed Movant's Post-Hearing Brief regarding the Motion to Suppress Evidence of Alleged Drug Distributions. (Id., Document No. 83.) On October 16, 2017, the United States filed its Response in Opposition. (Id., Document No. 84.) By Memorandum Opinion and Order entered on November 21, 2017, the District Court granted Movant's Motion *In Limine* to Exclude Witnesses from Courtroom Pursuant to Rule 615 (Document No. 55) and Motion *In Limine* to Allow Defendant to Appear at Trial Without Restraints in Presence of Jury (Document No. 57); denied as moot Movant's Motion *In Limine* to Prohibit Introduction of Rule 404(b) Evidence of Crimes, Wrongs or Other Acts (Document No. 53), Motion *In Limine* to Prohibit the Introduction of Undisclosed Physical Evidence (Document No. 54), Motion *In Limine* to Prohibit Reference to Supposed Origin of Controlled Substances (Document No. 56), and Motion to Suppress Custodial Statements (Document No. 51); deferred until trial a ruling on Movant's Motion *In Limine* to Prohibit Any Expert Testimony By Investigating Officers (Document No. 52), Motion *In Limine* to Prohibit Introduction of Witness Testimony Characterizing Audio and Video Records (Document No. 58), and Motion *In Limine* to Prohibit the Introduction of Undisclosed MDENT Policies and Procedures for Searching Informants and Vehicles (Document No. 59); denied Movant's Motion to Suppress

3

Evidence of Alleged Drug Distributions (Document No. 50-1); and granted the United States' Motion *In Limine* to Excluded Arguments and Evidence Regarding Potential Penalties Facing Defendant (Document No. 47). (Id., Document No. 86.)

On November 29, 2017, the United States filed an Information establishing a prior conviction for purposes of enhancing Movant's sentence pursuant to 21 U.S.C. § 851 as to Counts 1 and 3. (Id., Document 93.) By Order entered on January 30, 2018, the District Court denied Movant's Motion *In Limine* to Prohibit Any Expert Testimony By Investigating Officers (Document No. 52). (Id., Document No. 109.) On February 1, 2018, Movant, by counsel, filed a Motion to Retest Drug Evidence. (Id., Document No. 111.) On February 5, 2018, Movant, by counsel, filed additional pretrial motions: (1) Motion *In Limine* to Prohibit the Introduction of Laboratory Reports at Trial (Document No. 115); (2) Motion *In Limine* to Prohibit Introduction of Recorded Jail Calls (Document No. 116); (3) Motion *In Limine* Regarding Admission of Exhibits (Document No. 117); and (4) Motion *In Limine* to Prevent Mention of Alleged Supervised Release Violations and Federal Arrest (Document No. 118). On February 6, 2018, the United States filed its Response to Movant's Motion to Retest Drug Evidence (Document No. 120) and its Motion *In Limine* to Exclude MDENT Policies and Procedures (Document No. 121). On February 6, 2018, Movant, by counsel, filed a Motion to Reconsider, Alter, or Amend the Court's Memorandum Opinion and Order entered on November 21, 2017. (Id., Document No. 128.) By Memorandum Opinion and Order entered on February 7, 2018, the District Court granted Movant's Motion to Retest Drug Evidence. (Id., Document No. 129.) The United States filed its Response to Movant's Motions *In Limine* on February 12, 2018. (Id., Document Nos. 130 – 134.)

On February 19, 2018, Mr. Titus filed a Motion to be Relieved of Appointment as Counsel.

(Id., Document No. 137.) After conducting a hearing on the foregoing Motion, the District Court denied Mr. Titus' Motion to be Relieved of Appointment as Counsel.[2] (Id., Document Nos. 140 – 141.) On March 14, 2018, Movant, by counsel, filed additional pretrial motions: (1) Motion *In Limine* to Prohibit Testimonial Statements of Non-Testifying Witness (Document No. 146); (2) Motion *In Limine* to Exclude Fugitive Testimony (Document No. 147); and (3) Motion *In Limine* to Disallow Transcripts of Audio and Video Recorded Evidence (Document No. 148). On March 20, 2018, the United States filed the following: (1) Responses in Opposition to Movant's Motions *In Limine* (Document Nos. 154 – 156); (2) Motion *In Limine* to Exclude Defendant's Expert Witness (Document No. 157); (3) Motion *In Limine* to Exclude Extrinsic Evidence of Witness' Prior Convictions and Prior Acts (Document No. 158); (4) Motion *In Limine* to Exclude *Giglio* Evidence (Document No. 159); and (5) Motion *In Limine* to Exclude or Redact Text Messages (Document No. 160). On March 22, 2018, Movant, by counsel, filed his Response to the United States' Motions *In Limine*. (Id., Document No. 166.) By Order entered on March 23, 2018, the District Court denied Movant's Motion to Suppress Evidence of Alleged Drug Distributions (Document No. 92) and Motion for Reconsideration (Document No. 128). (Id., Document No. 170.) The District Court conducted a motions hearing on March 26, 2018. (Id., Document No. 174.) At the conclusion of the hearing, the District Court denied Movant's Motion *In Limine* to Prohibit Introduction of Witness Testimony Characterizing Audio and Video Records (Document No. 58), Movant's Motion *In Limine* to Prohibit the Introduction of Undisclosed MDENT Policies

---

[2] During the hearing on Mr. Titus' Motion to be Relieved of Appointment as Counsel, the District Court stated as follows: "[I]t is clear to the court that Titus is mounting a vigorous defense on Wilkerson's behalf. The number, variety, and mere ingenuity of the pre-trial motions he has filed indicates to the court that Titus' representation of the defendant clearly exceeds the bar of effective representation." (Criminal Action No. 2:16-cr-00218, Document No. 141, p. 4.)

and Procedures for Searching Informants and Vehicles (Document No. 59), Movant's Motion *In Limine* to Prohibit the Introduction of Laboratory Reports at Trial (Document No. 115), Movant's Motion *In Limine* to Prohibit Introduction of Recorded Jail Calls (Document No. 116), Movant's Motion *In Limine* Regarding Admission of Exhibits (Document No. 117), Movant's Motion *In Limine* to Prevent Mention of Alleged Supervised Release Violations and Federal Arrest (Document No. 118), the United States' Motion *In Limine* to Exclude MDENT Policies and Procedures (Document No. 121), Movant's Motion *In Limine* to Exclude Fugitive Testimony (Document No. 147), and Movant's Motion *In Limine* to Disallow Transcripts of Audio and Video Recorded Evidence (Document No. 148); deferred ruling on Movant's Motion *In Limine* to Prohibit Testimonial Statements of Non-Testifying Witness (Document No. 146) and the United States' Motion *In Limine* to Exclude *Giglio* Evidence (Document No. 159); denied as moot the United States' Motion *In Limine* to Exclude Defendant's Expert Witness (Document No. 157); granted the United States' Motion *In Limine* to Exclude Extrinsic Evidence of Witness' Prior Convictions and Prior Acts (Document No. 158) and the United States' Motion *In Limine* to Exclude or Redact Text Messages (Document No. 160).

Following a three-day jury trial, Movant was convicted on all three counts as charged in the Superseding Indictment. (Id., Documents Nos. 173, 180 – 182, 187.) On June 8, 2018, following the granting of extensions of time, Movant, by counsel, filed a Motion for a New Trial. (Id., Document Nos. 191, 193, 201, 202.) The United States filed its Response in Opposition on June 14, 2018. (Id., Document No. 203.) By Memorandum Opinion and Order entered on August 3, 2018, the District Court denied Movant's Motion for a New Trial. (Id., Document No. 207.) On October 1, 2018, Movant, by counsel, filed a Sentencing Memorandum. (Id., Document No. 212.)

A Presentence Investigation Report was prepared. (Id., Document No. 220.) After granting two motions to continue the sentencing hearing, the District Court held Movant's sentencing hearing on October 2, 2018. (Id., Document Nos. 205, 206, 208, 209, 214.) The District Court determined that Movant had a Base Offense Level of 32, and a Total Offense Level of 34, the Court having applied a two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice.[3] (Id., Document No. 219 and 220.) The District Court determined that Movant had a Criminal History Category of IV thereby subjecting Movant to the advisory guideline range of 240 to 262 months of imprisonment. The District Court then sentenced Movant to a total term of 240 months of imprisonment to run consecutive with the 24 months of imprisonment imposed in Criminal Action No. 2:09-00076.[4] (Id., Document Nos. 214 and 216.) The District Court further imposed a ten-year term of supervised release and a $300 special assessment. (Id.)

On October 15, 2018, Movant, by counsel, filed his Notice of Appeal. (Id., Document No. 221.) On appeal, Movant, by counsel, filed an Anders Brief stating there were no meritorious grounds for appeal but presenting the following questions for review: (1) Whether the District Court erred in denying Movant's Motion to Suppress Evidence; (2) Whether sufficient evidence supported Movant's convictions; and (3) Whether the District Court imposed a reasonable sentence. (Id., Document No. 235.) On April 9, 2020, the Fourth Circuit Court of Appeals affirmed Movant's convictions and sentence after finding there was sufficient probable cause to support the issuance of the search warrants, there was sufficient evidence supporting the jury's verdict, and Movant's sentence was substantively reasonable. (Id.); United States v. Wilkerson, 808 Fed.Appx.

---

[3] Movant's Guideline range was 240 to 262 months. The District Court sentenced Movant within the Guideline range.

[4] Movant was sentenced to 240 months as to each count, to run concurrently.

171 (4th Cir. 2020).

B.      **Section 2255 Motion:**

On March 8, 2021, Movant, acting *pro se*, filed his instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support. (Civil No. 2:21-00155, Document Nos. 240 and 241.) As his sole ground for *habeas* relief, Movant argues that defense counsel was ineffective in his failure to seek a necessary continuance regarding Movant's sentencing hearing pending the enactment of the First Step Act of 2018. (Id.) As relief, Movant requests that he "be resentenced under the current, post-First Step Act version of the statute of conviction." (Id.) By Order entered on March 10, 2021, the undersigned directed the United States to file its Answer. (Id., Document No. 245.) On May 11, 2020, the United States filed its Response in Opposition to Movant's Section 2255 Motion. (Id., Document No. 247.) On July 19, 2021, Movant filed this Reply. (Id., Document No. 251.)

**DISCUSSION**

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion

8

collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

9

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

In his Section 2255 Motion, Movant argues that defense counsel was ineffective in his failure to seek a necessary continuance regarding Movant's sentencing hearing pending the enactment of the First Step Act of 2018. (Civil Action No. 2:21-cv-00155, Document Nos. 240 and 241) Movant argues that following the changes occurring after the enactment of the First Step Act, "the mandatory minimum sentence triggered by [Movant's] convictions on Counts 1 & 3 was [reduced to] 15 years imprisonment." (Id., Document No. 241, p. 10.) First, Movant argues that counsel was deficient for failing to seek a continuance of Movant's sentencing until the First Step Act was signed into law. (Id., pp. 12 – 13.) Movant argues that his case is "on all fours with United

States v. Abney, 812 F.3d 1079 (D.C. Cir. 2016), where failing to request a continuance past the effective date when the Fair Sentencing Act was pending and would dramatically impact Defendant's sentence was found to be ineffective assistance of counsel." (Id., p. 13.) Movant argues that his circumstances were similar because he was "pending sentencing on counts for which the mandatory minimum penalty would be reduced following the passage of the [First Step Act]." (Id.) Movant claims that "[a]ny minimally competent criminal defense attorney would recognize that [Movant] would likely receive a more favorable sentencing outcome, were he not sentenced prior to the [First Step Act] becoming law, which would reduce by 5 years the applicable mandatory minimum sentence in his case." (Id.) Movant states that "[a] final version of the bill ultimately passed both houses of Congress and was signed into law by the President little more than 2 ½ months after [Movant] was sentenced." (Id.) Movant asserts that "[i]t was common knowledge among criminal defense community – and anyone paying attention to the news – that the [First Step Act] was pending and that the provision reducing the enhanced penalties under 21 U.S.C. § 851 that is relevant here would likely be in the final bill, but would not be retroactive." (Id.) Therefore, Movant concludes that "counsel's failure to request a continuance of [Movant's] sentencing until the [First Step Act] became law constituted deficient performance within the meaning of Strickland." (Id., p. 15.)

Second, Movant argues that he was prejudiced by counsel's deficient performance because "[h]ad counsel properly sought a continuance of [Movant's] sentencing hearing based on the pending [First Step Act], there exists a reasonable probability that [Movant] would have received a lesser sentence." (Id., p. 15.) Movant contends that "the record demonstrates that this Honorable Court granted [Movant's] counsel a myriad [of] continuances." (Id., p. 16.) Specifically, Movant

11

states that the Court granted Movant's defense counsel eight continuance concerning the trial, three continuances of the deadline for filing a motion for a new trial, and two continuances of the sentencing hearing. (Id.) Movant contends that had defense counsel requested and been granted a continuance until after the First Step Act became law, Movant "would have likely received a significantly shorter sentence as a result of the reality that the applicable mandatory minimum sentence would have been reduced from 20 years imprisonment to only 15 years imprisonment." (Id.) Therefore, Movant concludes that "[t]he reasonable probability that this Honorable Court would have imposed a lesser sentence after the First Step Act establishes that counsel's deficiency – failing to seek the requisite continuance to allow the First Step Act to reduce the mandatory minimum sentence applicable to [Movant] – was prejudicial within the meaning of Glover and Strickland." (Id., p. 17.)

In Response, the United States asserts that Movant's above "argument distorts the Strickland standard by asking this Court to give him the benefit of hindsight and impose an impossible, new bar for future defense attorneys to hurdle." (Id., Document No. 247, p. 5.) The United States argues that "Strickland does not require defense attorneys to predict the passage of pending legislation and delay sentencing hearings for months in hope of the passage of a pending legislation; rather, it states that defense counsel's performance is evaluated from his or her perspective *at the time*." (Id.) Second, the United States asserts that defense counsel did note in Movant's Sentencing Memorandum that pending legislation could change the mandatory minimum sentence from 20 years to 15 years. (Id.) The United States explains that defense counsel further acknowledged that the passage of the First Step Act was far from certain at the time of Movant's sentencing. (Id., pp. 5 – 6.) In support, the United States cites a January 4, 2019 Brennan

12

Center for Justice article that noted the following: (1) The bill was stalled in early October 2018, until a "breakthrough occurred in November, when lawmakers and advocates reached a compromise on the First Step Act, amending it to incorporate four provisions from the [Sentencing Reform and Corrections Act]", a bill introduced in 2015; and (2) How the bill had to withstand "series of 'poison pill' amendments that would have unacceptably weakened the bill and split the bipartisan coalition supporting it, just at the moment of passage [in December 2018]." (Id., p. 6.) Third, the United States argues that Movant's circumstances differ from those involving the defendant in United States v. Abney. (Id., pp. 6 – 7.) The United States notes that in Abney, the defendant was sentenced to a 10-year mandatory minimum sentence for possession of 68 grams of crack *one day* before the President signed the Fair Sentencing Act into law that would have subjected defendant to the new 5-year mandatory minimum. (Id., p. 7.) The D.C. Circuit in Abney determined that counsel's performance was deficient for failing to seek a continuance until after the Fair Sentencing Act was signed into law because the Fair Sentencing Act's "impending enactment was so important and widely publicized --- and the reasonable likelihood of its retroactive affect so apparent – that objectively reasonable counsel would have known about it." (Id.) The United States argues that at the time Abney was sentenced, "the [Fair Sentencing Act] had already passed both chambers of Congress, was awaiting the President's signature, and the President had already publicly indicated his intent to sign it into law." (Id.) The United States contends that at the time of Movant's sentencing on October 2, 2018, the passage of the First Step Act was far from certain and counsel "had no way of predicting when or whether the bill would pass both Congressional chambers – a 'breakthrough' did not occur until November 2018, when provisions were amended to it from a bill that had been pending since 2015." (Id.) Thus, the United

13

States argues that "[t]o suggest that defense counsel was deficient for not asking for indefinite continuances when no one knew if the bill would ever become law misstates what occurred in Abney and distorts the Strickland standard." (Id., p. 8.) Accordingly, the United States concludes that Movant cannot demonstrate that counsel's representation was deficient or unreasonable and the prejudice prong need not be addressed. (Id.)

In Reply, Movant argues that he is entitled to an evidentiary hearing "based on the Government's failure to establish that the record conclusively forecloses his entitled to relief." (Id., Document No. 251, pp. 2, 4 - 7.) Movant asserts that his "verified memorandum brief, submitted under penalty of perjury, is consistent with the record and 'if true, would entitle him to relief.'" (Id., p. 7.) Movant claims that the United States' "arguments are insufficient to show that [Movant's] claims are 'refuted by the record.'" (Id.) Movant states that the "versions of events offered by the parties may only be reconciled through this Court assessing the credibility of the live testimony of [Movant] and his former counsel at an evidentiary hearing." (Id.) Movant further clarifies that he "did not allege that counsel was deficient for failing to foresee the passage of the First Step Act, but rather for failing to seek a continuance when it became clear – based on media reporting – that the First Step Act would likely become law." (Id., p. 5.) Thus, Movant contends that an evidentiary hearing is necessary. (Id., p. 8.)

A court must hold an evidentiary hearing on a Section 2255 Motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Generally, whether to hold an evidentiary hearing is left to the sound discretion of the district court. Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). When a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record

14

and a credibility determination is necessary to resolve the issue, an evidentiary hearing is required. See Witherspoon, 231 F.3d 923, 925-27 (4th Cir. 2000); also see Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970). There, however, "is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances." Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007)("Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events."); also see United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004)(a court may discount "unsupported, conclusory statements" in an affidavit). The Fourth Circuit has explained that although a district court has before it conflicting affidavits, no evidentiary hearing is required where such would add nothing to the proceedings. United States v. Barsanti, 943 F.2d 428, 440 (4th Cir. 1991); also see United States v. Santana, 263 Fed.Appx. 334, 335 (4th Cir. 2008)("[I]t is not per se error for a district court to make credibility determinations on the basis of conflicting affidavits . . ."). "Holding an evidentiary hearing in those cases merely for the sake of holding an evidentiary hearing would squander scarce judicial resources that may be better utilized elsewhere." Dryer v. United States, 2016 WL 1019438, * 6 (S.D.W.Va. Feb. 19, 2016). Thus, a Section 2255 Motion may be resolved without an evidentiary hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); See United States v. Mitchell, 484 Fed.Appx. 744, 745 (4th Cir. 2012).

Based upon a review of the entire record, the undersigned finds that an evidentiary hearing is not necessary as there are no disputed facts beyond the record, a credibility determination is unnecessary, and the record clearly demonstrates that Movant is not entitled to relief on his claim.

15

It is undisputed that Movant's counsel failed to seek a continuance regarding the passage of the First Step Act, Movant was sentenced on October 2, 2018, and the First Step Act was enacted into law on December 21, 2018. The question before the Court is not a factual question, but rather a legal question. Specifically, whether counsel's failure to seek a continuance moving Movant's sentencing hearing to an indefinite date after the passage of the First Step Act, was deficient performance. Movant argues that his case is "on all fours" with Abney, and this Court should similarly find that Movant's counsel was ineffective in failing to seek a continuance of his sentencing date. In Abney, a divided panel of the D.C. Circuit held that no strategic purpose supported defense counsel's decision not to seek a continuance pending the passage of the Fair Sentencing Act of 2010. Abney, 812 F.3d at 1088. As correctly noted by the United States, the factual circumstances of Movant's case differ significantly from the defendant in Abney. In Abney, the defendant was sentenced *one day* before the enactment of the Fair Sentencing Act of 2010, the Fair Sentencing Act had already passed both chambers of Congress and was awaiting the President's signature, the President had publicly indicated his intent to sign the Fair Sentencing Act into law, and the defense bar was seeking continuances for similarly situated defendants at the time of Abney's sentencing. Id. at 1088-89. Unlike Abney, Movant was sentenced approximately two and a half months before the enactment of the First Step Act of 2018, and it was uncertain whether the bill would pass both Congressional chambers at the time Movant was sentenced. In Downs v. United States, the Sixth Circuit explained that "unlike the court in Abney, we see the issue as one of foresight rather than strategy." Downs v. United States, 879 F.3d 688, 691 (6th Cir. 2018)(noting that strategy "involves an allocation of resources based in part on facts already known" whereas foresight "requires an ability to predict things that have not yet occurred.") Thus,

16

defense counsel's decision to not seek a continuance must be evaluated based on "counsel's perspective at the time." See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.") The undersigned, therefore, must consider the legislative history surrounding the passage of the First Step Act.

The bill providing for the First Step Act of 2018 was initially introduced on March 29, 2017. S. 756 – 115th Congress (2018). Following multiple amendments, the Senate passed an amended version of the First Step Act resolving differences on December 18, 2018. Id. An article from the Brennan Center for Justice dated January 4, 2019, notes that the bill became stalled "until a breakthrough occurred in November [2018] when lawmakers and advocates reached a compromise."[5] The House passed the bill, as amended by the Senate, on December 20, 2018. S. 756 – 115th Congress (2018). The President then signed the First Step Act into law on December 21, 2018. Id. It has been recognized that the passage of the First Step Act was uncertain as late as December 6, 2018. United States v. Session, 2022 WL 409643, * 8 (E.D.La. Feb. 10, 2022). The Court in Session explained as follows:

> Legislative history reflects that the bill providing for the First Step Act was introduced on March 29, 2017. Following amendments in both houses, as of November 2018, disagreement still existed regarding its scope. On November 15, 2018, Senator Grassley introduced a version that incorporated new sentencing reform provisions. Multiple additional amendments, some of them highly

---

[5] The article from the Brennan Center for Justice dated January 4, 2019, details the procedural and political hurdles confronted during the passage of the First Step Act and the series of "poison pill" amendments that would have rendered the bill unacceptable and split the bipartisan coalition supporting it. See https://www.brennancenter.org/our-work/analysis-opinion/how-first-step-act-became-law-and-what-happens-next

> controversial, were introduced in the days leading up to the Act being signed into law on December 21, 2018.

Id.; also see Gomez v. United States, 2023 WL 4216143, * 5 (N.D.Tx. May 26, 2023)("As of Movant's resentencing on November 26, 2018, no version of § 403 had passed either house of Congress."). Based on the foregoing, the undersigned finds that the passage of the First Step Act was uncertain on the date of Movant's sentencing (October 2, 2018). It is well established that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996). Thus, the undersigned cannot find that defense counsel acted unreasonably or deficiently by failing to request a continuance of Movant's sentencing hearing pending the passage of the First Step Act. See Gomez, supra, 2023 WL 4216143, * at 5("Passage of the First Step Act, the timing, and the substance of the provisions that would ultimately be included were therefore uncertain [on November 26, 2018], and counsel was not deficient for failing to foresee an impending change in the law."); Fisher v. United States, 2022 WL 13909681, * 6 (S.D.In. Oct. 24, 2022)("A reasonable attorney may well have known about the [First Step Act] in August 2018, but Mr. Fisher provides no reason to conclude that every reasonable attorney must have known then that passage was imminent."); Session, supra, 2022 WL 409643, at * 8(Finding that counsel was not ineffective in failing to request a continuance pending passage of the First Step Act because on the date of defendant's sentencing on December 6, 2018, "the ultimate sentencing reforms had not been introduced, and the passage of the First Step Act was uncertain."); United States v. Staggers, 2022 WL 179468, * 8 (E.D.La. Jan. 20, 2022)(Finding that counsel was not ineffective in failing to request a continuance pending passage of the First Step Act because on the date of defendant's sentencing on November 14, 2018, the passage of the First Step Act was uncertain.). Furthermore, it is uncertain whether the District

Court would have been willing to grant an additional continuance had defense counsel requested such. The record reveals that the District Court had already granted numerous motions to continue filed by defense counsel regarding Movant's trial and sentencing dates. (Document Nos. 18, 24, 27, 32, 34, 82, 90, 95, 101, 206, 209.) The undersigned further notes that any requested continuance of the sentencing hearing based on the passage of the First Step Act would have resulted in a continuance to an indefinite date, which is disfavored by the Court. See United States v. McMahon, 422 Fed.Appx. 523, 525 (6th Cir. 2011)(A judge need not await the outcome of an ongoing political discussion, and did not abuse its discretion in denying a continuance of sentencing "even when 'presented with compelling arguments that the political climate was shifting towards eliminating the unwarranted crack/powder 100:1 ratio.'") Based upon the foregoing, the undersigned respectfully recommends that Movant's above *habeas* claim be dismissed because Movant cannot establish the first prong of the Strickland standard.

## PROPOSAL AND RECOMMENDATION

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Document No. 240) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: September 18, 2023.



Omar J. Aboulhosn
United States Magistrate Judge